RICHARD JURECZKI v. THE STATE.

No. 23945. Delivered April 14, 1948.
Rehearing Denied May 26, 1948.

C. L. *Patterson*, of Bandera, *Schweppe, Schweppe & Allison,* of San Antonio, and *Allen C. Wilson,* of Boerne, for the appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

DAVIDSON, Judge.

This is a case of fratricide. The conviction is for murder without malice, with punishment assessed at five years in the penitentiary.

The deceased, Lloyd Jureczki, a carpenter, resided with his wife and two children upon a farm belonging to his father about two miles from the town of Bandera. Appellant temporarily resided in the home of deceased and worked with him upon a job in Bandera. Leo Jureczki, another brother, was a visitor in the home, as was also John Jureczki, an uncle. About eight o'clock the evening of January 4, 1946, deceased, appellant, and Leo returned home from Bandera. The wife of deceased began to upbraid the deceased for not coming home sooner. An argu-

ment ensued between them in the kitchen. Appellant joined in the argument, resulting in a fight between him and deceased, appellant being the aggressor. The wife of deceased poured a bucket of water on them in an endeavor to get them to quit. The fight continued into the living room. A heavy lamp on the Victrola was knocked off, striking appellant on the head and rendering him temporarily unconscious. It seems the fight stopped, deceased leaving the room and later returning. According to the testimony of the wife of deceased, a shot was heard. She rushed into the room and saw Leo pulling appellant across the bed, saying to him, "You killed your brother," to which appellant replied, "I told him if he came any closer I would shoot him." Deceased was heard to say, "He shot me through and through," and Leo said to appellant, "Look what you did— you killed your brother." Appellant had a shotgun in his hands.

After the shooting, appellant left and was two days thereafter arrested at Childress, Texas, some two hundred fifty miles from the scene of the homicide.

Deceased died as a result of a gunshot wound in the groin or lower part of the stomach, inflicted with a 12-gauge single barrel shotgun.

The foregoing is the State's case, as shown primarily by the testimony of Leo Jureczki and the then-wife of the deceased.

The events occurring prior to the shooting were not materially disputed. It is as to the firing of the fatal shot that there is a serious conflict. The uncle, John Jureczki, who was in the room at the time and the only eye-witness to the killing, testified that the shooting was entirely accidental—which is best shown in the witness' statement to the sheriff, made soon after the difficulty. This statement reads as follows:

"Lloyd (deceased) was standing by the fireplace and when Richard (appellant) came in he put his arm around Lloyd's neck and they started wrestling, and fell down on the floor in front of the fireplace. Then they wrestled around and got down between the beds. There was an old single barrel shotgun standing at the head of the bed leaning against the wall and there was a small chair between the beds near the shotgun. In the scuffle Lloyd got hold of the bed and that jarred the shotgun and it fell and hit one of the little sticks on the legs of the chair and shot and the bullets hit Lloyd. The end of the shotgun barrel was about a yard from Lloyd when it shot, or it might have

been a little further away from him. Richard had hold of his feet and was pulling him towards the fireplace when the gun went off."

Appellant, testifying in his own behalf, said that he was unconscious from the time he was hit on the head by the falling lamp until after the shooting. He explained his presence in in Childress, Texas, at the time of his arrest as being on his way to Wheeler, Texas, to visit his wife and child. He denied knowing that his brother had been shot or killed. He denied any animosity or ill-feeling existing between him and his brother and attested that their relations with each other were the best.

There was an abundance of testimony showing the absence of any motive for the killing and showing the friendly and brotherly relations existing between deceased and appellant prior to the killing.

Appellant insists that there is an absence of testimony to show that he killed his brother or to overcome the testimony of the eye-witness showing an accidental killing.

The res gestae statements referred to, together with the testimony showing that appellant had the shotgun in his hand and his failure to deny, when first called upon to do so, that he shot his brother, are deemed sufficient to warrant the jury in concluding that appellant fired the shot that killed his brother and to reject the testimony of the eye-witness.

Appellant's contention is, therefore, overruled.

Such conclusion also disposes of appellant's contention that a charge on circumstantial evidence was required. The facts from the State's standpoint do not present a case of circumstantial evidence. Branch's P. C., Sec. 1874.

Appellant complains because self-defense was not submitted. This insistence centers around the res gestae statement of the appellant, when confronted with the statement that he had killed his brother, that "I told him if he came any closer I would shoot him."

The right of self-defense arises only when there is evidence showing that the accused acted in defense against the attack, real or apparent, of his adversary. Here, there is an entire

absence of any testimony that the deceased made any demonstration towards the appellant as a result of which he fired or that the deceased "came any closer" after having been warned by appellant not to do so. As the matter is here presented, the right of self-defense is claimed to exist only because appellant told deceased if he came any closer he would shoot him.

We are not authorized by intendment, supposition, or otherwise, to say that the deceased did not heed the warning so made, or that he advanced thereafter upon the appellant. To hold that self-defense was in the case would require us to so conclude.

The conclusion is reached that the facts do not raise the issue of self-defense.

We are unable to agree with the appellant that the charge of the court in submitting his defensive theories of accidental killing and the deranged condition of his mind as a result of the blow upon him by the falling lamp were too restrictive of his rights and shifted the burden of proof.

We note that in the application made of these defenses to the fact that the trial court instructed the jury to the effect that if they entertained a reasonable doubt as to the existence thereof to acquit. Such charge amply protected appellant's rights before the jury.

During the cross-examination of the appellant, State's counsel interrogated him as to the making of a statement to the arresting officers shortly after his arrest. The interrogation did not seek to show the contents of any statement made but, as construed by the trial court, was a predicate to the introduction of the statement. The State did not further develop the matter and did no introduce or seek to introduce the statement or to show the contents thereof.

Upon appellant's objection the trial court withdrew from the jury's consideration the testimony showing that a statement was made.

Upon the hearing of the motion for new trial appellant showed by the jurors that during their deliberation they considered and discussed the fact that a statement had been made by the appellant and had not been introduced in evidence. Appellant claims that such was misconduct of the jury.

Appellant's contention is not tenable. It is a rule of law of long standing that a jury will not be permitted to impeach its verdict or to show the reasons or considerations upon which their verdict was based. Jack v. State, 20 Tex. App. 656, and Sandoval, et al, v. State, decided February 25, 1948, and not yet reported. (151 Tex. Crim. Rep. 430.) The facts here presented bring this case within the rule of law stated.

Finding no reversible error, the judgment of the trial court is affirmed.

Opinion approved by the Court.

ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

Appellant's motion for rehearing exhaustively discusses the evidence relating to the issue of self-defense, which he contends should have been submitted to the jury.

It is sufficient to say that we have given consideration to his argument and have reviewed all of the evidence with great care, but remain of the opinion that there was no basis for the requested issue to be submitted to the jury.

The motion for rehearing is overruled.